TATEM (Case No. 13,759) [23 Fed. Cas. page 708]

## Case No. 13,759.

### Ex parte TATEM.

[1 Hughes, 588.] [1]

District Court, E. D. Virginia. Jan. 16, 1877.

COURTS — FEDERAL JURISDICTION — NAVY YARD— CONTIGUOUS WATERS—HABEAS CORPUS.

1. The courts of the United States have, by section 711 of the Revised Statutes of the United States, jurisdiction exclusive of the state courts of crimes committed in the Gosport Navy Yard in Virginia.

2. By navy yard is meant not merely the land on which the government does work connected with ships of the navy, but the waters contiguous necessary to float vessels of the navy while at the navy yard.

3. An arrest by the state authorities of a person accused of a crime committed in one of the places mentioned in section 711 is a violation of a law of the United States in contemplation of section 753; that is to say, is a violation of section 711, and a United States court may issue the writ of habeas corpus for a person so arrested by state authorities, and in jail under such arrest.

On habeas corpus.

The prisoner was represented by William H. C. Ellis.

David J. Godwin, commonwealth's attorney, appeared in behalf of the Portsmouth authorities.

HUGHES, District Judge. A prosecution is pending in this court by the United States against John W. Tatem, charged with shooting and killing one Michael Joyce on board the United States steamer Canandaigua, on the night of January 1, 1877. The ship was lying at the wharf of the United States, in the navy yard of the United States at Gosport, which is situated near the city of Portsmouth, in the county of Norfolk. By an act of assembly of January 25, 1800, and deeds made in pursuance thereof, and by subsequent acts and deeds (see Acts 1846–47, c. 12, pp. 14, 15, and Acts 1833, c. 33, p. 25), the commonwealth of Virginia ceded to the United States the territory and all the jurisdiction which the commonwealth possessed, over the public lands known by the name of Gosport, and certain lands immediately opposite, for the purpose of a navy yard. By navy yard is meant not merely the land on which the government does work connected with ships of the navy, but the waters contiguous necessary to float the vessels of the navy while at the navy yard. The land ceded lies on both sides of the water at Gosport. By section 5431 of the Revised Statutes of the United States it is enacted that every person who unlawfully and wilfully, but without malice, shoots and kills another within any fort, arsenal, dockyard, magazine or place or country under the exclusive jurisdiction of the United States, shall be guilty of manslaughter and punished by fine and

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

imprisonment (as prescribed by section 5343). Section 711 of the Revised Statutes enacts that the jurisdiction vested in the courts of the United States over crimes and offences cognizable under the laws of the United States shall be exclusive of that of the courts of the several states.

The death of the deceased occurred on the premises of the United States, where he was taken immediately after the shooting. Complaint of the killing was promptly made before United States Commissioner Barry, and after an examination of witnesses, the accused was allowed to give bail in the sum of $1,000 for his appearance at the next grand jury term of this court. Subsequently to his release, upon recognizance, he was arrested upon a charge of murder under a warrant of the mayor of Portsmouth, and committed to the jail of Portsmouth upon a mittimus which contained an indorsement authorizing the prisoner's discharge, upon giving bail in the sum of $1,000. And it appears in evidence that this commitment by the mayor of Portsmouth was for the same act of killing and shooting the deceased, Michael Joyce, on board the ship Canandaigua, lying at the wharf of the Gosport Navy Yard, for which he is under prosecution by the United States. The prisoner being therefore under two prosecutions for the same act, filed his petition before me on the 13th instant, reciting the facts and praying for a writ of habeas corpus requiring the jailer of Portsmouth to produce his body before this court to-day; and the prisoner is now here in custody of the sergeant of Portsmouth.

The act complained of having been committed within a place, all jurisdiction within which has been ceded by Virginia; and the United States courts having exclusive jurisdiction of the offence committed therein, any prosecution for the same act in a state court is in violation of section 711 of the Revised Statutes, giving the United States courts jurisdiction exclusive of the state courts. And section 753 of these Revised Statutes authorizes the issuing of the writ of habeas corpus by the United States court in any case of a violation of the constitution, or a law, or a treaty of the United States, where the prisoner is in jail, under whatever authority.

Nothing could be more scandalous or barbarous than a contest between two courts for the jurisdiction of a criminal prosecution involving the character, liberty, and property of an accused person. Any court of proper sentiments so far from seeking to secure such jurisdiction would rather avoid it if that could legally be done. In the present case there can be no doubt that the jurisdiction is in the United States. It is there by express cession from the commonwealth of Virginia; it is exclusively there by the statutes and constitution of the United States. In addition to these considerations, the cognizance of this particular offence had already been taken, and a prosecution institut-

ed by the United States before the state authorities had taken possession of the prisoner; and, therefore, I do not perceive how this court could abrogate its powers and duties in this case. If this court had concurrent jurisdiction with the state authorities, I should at once send this case to those authorities for prosecution. The courts of the United States prefer to take that course in all cases of concurrent jurisdiction. Not long ago the circuit court for this district tried an indictment for murder on board a ship lying in or near Hampton Roads. There was a verdict of guilty. But some doubt arose whether the vessel was lying within the body of a county—that is to say, within the fauces terræ of one of the counties contiguous to the Roads. On this point there was no evidence. On account of this doubt the United States court refused to enter judgment or pronounce sentence upon the prisoners, who had been thus committed. So here, if there were any room for doubt that the act complained of had been committed within the limits of the jurisdiction ceded by Virginia to the United States, and in which the jurisdiction of the courts of the United States is made by an express law exclusive, I would remand the prisoner with alacrity to the authorities of Virginia. The facts concerning the jurisdiction, however, being positive, all doubt is removed, and I am concluded in my action. See U. S. v. Cornell [Case No. 14,867]; U. S. v. Ames [Id. 14,441], and cases cited therein.

I should have preferred that this writ had been asked of a superior court of the state; but as the petition has been presented here. I have entertained it as a matter of duty. The prisoner must be discharged.